UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DWAYNE ROBINSON,

                Plaintiff,

      -vs-                                    5:00-CV-1714
                                                    (NAM/GJD)

THE STATE OF NEW YORK OFFICE OF
CHILDREN AND FAMILY SERVICES, LOUIS
GOSSETT, JR. RESIDENTIAL CENTER
(f/k/a The New York State Division for Youth Services);
STEPHEN FARKAS; ERNEST GERMANO; MICKI
WARD-HARPER; BRENDA AULBACH; and JOE
IMPICCIATORE, as individuals and agents for the OCFS,

                Defendants.
_____

**APPEARANCES**                                    **OF COUNSEL**

STONE, STONE LAW FIRM                 Michelle Elizabeth Stone, Esq.
*Attorneys for Plaintiff*
P.O. Box 118
Vestal, NY 13851-0118

ELIOT SPITZER                                      Gerald J. Rock, Esq.
Attorney General of the State of New York      Assistant Attorney General
The Capitol
Albany, New York 12224

NORMAN A. MORDUE, Chief Judge

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

      Presently before the Court is defendants' motion for summary judgment. Plaintiff alleges that he was discriminated against by his employer in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq..,* 42 U.S.C. § 1983 and the New York Executive or "Human Rights" Law ("HRL"), N.Y. Exec. Law §296. Defendants assert plaintiff has failed to

support his allegations with material evidence and seek judgment in their favor pursuant to Fed. R. Civ. P. 56.

**II.    FACTUAL BACKGROUND**

Plaintiff has been employed by defendant, the New York State Office of Children and Family Services ("OCFS"), at the Louis Gossett, Jr. Residential Center ("the Gossett Center" or "the center")) as a Youth Division Aide since June 1993.  The Gossett Center is a minimum security facility that houses youth criminal offender residents from various parts of New York State.

Plaintiff alleges in the second amended complaint that on April 18, 1995, he restrained one of the residents at the center utilizing proper restraint procedures and in full compliance with all rules and regulations of OCFS and the center.  Following the incident, and upon reports that plaintiff had engaged in "horseplay" and improperly restrained the resident, OCFS requested that the New York State Child Abuse and Maltreatment Register ("the Register") conduct an investigation.  According to plaintiff, the Register later determined that the allegations of an improper restraint were unfounded.  Thereafter, OCFS conducted its own investigation of the April 18, 1995, incident and charged plaintiff with misconduct.  Following disciplinary proceedings which were held between November 1996 and January 1997, an arbitrator determined that plaintiff should be formally reprimanded and fined $1,000.00 for his alleged misconduct.

Plaintiff avers that the findings of OCFS were erroneous and were influenced by unlawful racial discrimination.  In May 1997, plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") and the United States Equal Employment Opportunity Commission

2

("EEOC") concerning the discriminatory treatment he received as a result of the April 18, 1995, incident and the overall racially hostile work environment at the center.  Plaintiff alleges that as compared to his non-African-American co-workers, he received disparate treatment in connection with disciplinary actions by the center, requests for personal leave, requests for more desirable shifts, and opportunities for career advancement.  Further, plaintiff alleges that the work environment at the center was permeated with racial hostility and bias.  To wit, he avers that the facility was "filled with racist comments, slurs and jokes," which circumstance, although known to defendants, was never remedied.

### III.  DISCUSSION

A.   Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See id.*  The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  A trial court must resolve all ambiguities and draw all inferences in favor of that

3

party against whom summary judgment is sought, *see Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985). It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

      The Court notes in the first instance that a large number of plaintiff's allegations concerning alleged discriminatory actions by defendants and the existence of a racially hostile work environment at the Gossett Center are vague and conclusory, wholly lacking in factual support and are otherwise refuted by defendants in their motion papers. For example, plaintiff complains of the "placement in an employee lounge of racially insensitive and offensive literature regarding the 'KKK,' including offensive pictures of children dressed in 'KKK' garb." However, it is clear that the "offensive literature" in question was actually an "anti-Klan" publication distributed by the Southern Poverty Law Center entitled "Ten Ways to Fight Hate," and can hardly be described as racially offensive. Further, plaintiff now makes the self-serving, conclusory assertion that defendants "tampered" with his time cards in an attempt to discipline him unjustly for tardiness and yet the record is devoid of a suggestion, much less proof, that plaintiff ever objected to disciplinary action taken against him for serial tardiness on the ground that evidence against him had been manufactured.

      However, based upon the inflammatory nature of some of plaintiff's allegations and the lack of specific proof or admissions to refute them, the Court finds that plaintiff has created a material question of fact, however weak, to sustain his claims. For example, while the "facts" set forth in the affidavits of four co-workers of plaintiff purport to provide record support for plaintiff's claims of a racially charged, hostile work environment, the allegations therein are in

4

some cases incomprehensible and in large part vague, conclusory, and insufficient to create a material triable issue.  However, the affidavit of Kenneth Brown provides enough detail to suggest possible disparate treatment of plaintiff, though Brown's allegations do not sufficiently establish that the basis for the alleged disparate treatment was plaintiff's race.  Plaintiff asserts, however, that the terms "tar babies," "zebras," "Canadian," and "nigger lover" were used regularly in the facility by staff members to describe persons of mixed race and people of color.  Combined with defendants' acknowledgment that at least one staff member was disciplined for circulating a racial joke - the "Farmer's Dayvorce" which included the term "nigger," the Court finds plaintiff has established a sufficient question concerning the racial environment at the Gossett Center.  Based thereupon, plaintiff has likewise provided support, however minimal, for his allegations that he was treated differently than co-workers in matters of discipline, requests for personal leave, requests for more desirable shifts, and opportunities for career advancement based on his race.

The Court has taken note of defendant's strenuous argument concerning plaintiff's failure to oppose defendants' Statement of Undisputed Material Facts pursuant to Local Rule 7.1(a)(3) or to file his own such statement.  Defendants argue that judgment should be granted in their favor on this basis alone since plaintiff is now deemed to have admitted all of the facts set forth in defendants 7.1 Statement, including the averment that "neither race nor any retaliatory motive was a factor in disciplinary proceedings against plaintiff."  The Court finds, however that this averment by defendants is conclusory in nature and states an ultimate legal determination, or at the very least a mixed statement of fact and law.  It is not the type of "undisputed" material fact contemplated by the Local Rule.  In contrast, plaintiff's failure to oppose defendants' statements

5

concerning specific factual issues such as plaintiff's actions or inactions at particular dates and times, the circumstances of particular disciplinary proceedings against plaintiff and other employees, and the Gossett Center's hiring policies and history of employment has resulted in plaintiff's admission of facts favorable to defendants.

Thus, while plaintiff's failure to oppose properly defendant's 7.1 Statement has made prosecution of this action largely more difficult, it is not dispositive of the claims raised by plaintiff's second amended complaint.

### IV. CONCLUSION

Based on the foregoing, defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: June 14, 2006
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge