UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DWAYNE ROBINSON,

        Plaintiff,
   -vs-                                            00-CV-1714

THE STATE OF NEW YORK OFFICE OF
CHILDREN AND FAMILY SERVICES, LOUIS
GOSSETT, JR. RESIDENTIAL CENTER
(f/k/a The New York State Division for Youth Services);
STEPHEN FARKAS; ERNEST GERMANO; MICKI
WARD-HARPER; BRENDA AULBACH; and JOE
IMPICCIATORE, as individuals and agents for the OCFS,

        Defendants.

---

**APPEARANCES**                                                    **OF COUNSEL**

STONE AND STONE                                                    Michelle E. Stone, Esq.
*Attorneys for Plaintiff*
P.O. Box 118
Vestal, New York 13851

ELIOT SPITZER                                                      Gerald J. Rock, Esq.
Attorney General of the State of New York                          Assistant Attorney General
The Capitol
Albany, New York 12224

**NORMAN A. MORDUE, Chief United States District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

       Presently before the Court is defendants' motion for reconsideration of this Court's June 14, 2006, denial of their summary judgment motion. Also before the Court is plaintiff's cross-motion for expansion of the time within which to file a Statement of Material Facts as required by Local Rule 7.1(a)(3) in opposition to the motion for summary judgment previously decided. In

this civil rights action, plaintiff alleges that he was discriminated against by his employer in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq..,* 42 U.S.C. § 1983 and the New York Executive or "Human Rights" Law ("HRL"), N.Y. Exec. Law §296.  The Court assumes the parties' familiarity with the factual and procedural background of plaintiff's claims.

## II.     DISCUSSION

### A.     Motion for Reconsideration

### 1.     Hostile Work Environment

Defendants asserted in their summary judgment motion that plaintiff had failed to support his allegations of employment discrimination with material evidence.  As referenced in the previous Memorandum-Decision and Order denying defendants' motion for summary judgment, the fact is not lost on the Court that many of plaintiff's allegations are unsupported or ring hollow under the evidentiary analysis required by Fed. R. Civ. P. 56.  However, one need only reference Second Circuit case law to observe the particularly circumspect manner in which the appellate court views allegations of racial employment discrimination such as plaintiff's.

In *Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426 (2d Cir. 1999), a case remarkably similar to the one at bar, the Second Circuit reversed a district court's determination that a plaintiff's mostly vague and episodic allegations of racial hostility and disparate treatment in her workplace were insufficient to withstand summary judgment.  The district court found that plaintiff's allegations concerning a racially charged work environment were not actionable because the incidents relied on by plaintiff were "infrequent, isolated and sporadic."  Indeed, many of the alleged racial epithets at the heart of plaintiff's complaint were

2

uttered by unidentified co-workers and many of plaintiff's allegations were unsupported in opposition to defendants' summary judgment motion.[1] Nevertheless, the Second Circuit reversed, stating that "there is neither a threshold 'magic number' of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Richardson*, 180 F.3d at 439 (citing *Rodgers v. Western-Southern Life Ins. Co*, 12 F.3d 668, 674 (7th Cir. 1993); *Harris v. Forklift Systems*, 510 U.S. 17, 22 (1993) (noting that hostile environment analysis "is not, and by its nature cannot be, a mathematically precise test")). While the district court dismissed some of plaintiff's more vague allegations because "to infer racial animus" from those incidents "would require drawing inference upon inference," *Id.,* 180 F.3d at 440, the Second Circuit held that plaintiff, as "the non-moving party, was entitled to the benefit of the very inferences the district court rejected." *Id..* Although "isolated, minor episodes of harassment do not merit relief under Title VII," the Second Circuit stated that "whenever . . . harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse, it is actionable under Title VII, so long as the employee **subjectively** experienced a hostile work environment." *Id.* (citing *Torres v. Pisano*, 116 F.3d 625, 631-32 (2nd Cir. 1977) (emphasis added).

---

[1] For example, in footnote 1 the Circuit noted that plaintiff failed either to support an allegation that an unidentified co-worker had called her a "nigger" in her affidavit in opposition to DOCS's summary judgment motion or mention it in her appellate brief. *See Richardson*, 180 F.3d at 426 n.1. However, since the allegation was in her supplemental complaint, was not refuted by DOCS and was addressed by the district court, the Circuit "considered it among those incidents forming the basis" for plaintiff's hostile work environment claim. *Id.*

3

In the present case, plaintiff asserts that he experienced a hostile work environment and has cited several incidents demonstrating alleged racial animus toward African Americans including racially offensive language used by employees in the facility and a racial joke disseminated within the workplace. Defendants argue that plaintiff acknowledged no racial slurs were ever used in his presence. However, during his deposition, plaintiff stated that he did hear the term "Canadian" used in his presence and that a number of co-workers advised him that "Canadian" was commonly used by employees in place of the word "nigger."
The Court credited plaintiff's statements concerning the racial environment at Gossett in denying defendants' motion for summary judgment, and also considered the affidavits of witnesses who purported to support plaintiff's claims of racial hostility and discrimination at the facility. Contrary to defendants' argument, the Court did not "reject" three of the four affidavits submitted by plaintiff in opposition to their summary judgment motion. Instead, the Court noted that these affidavits were "in large part" incomprehensible, vague, conclusory and insufficient to create a material triable issue. If the Court had found **no** part of these affidavits to be of evidentiary quality, it surely would have stated so. Rather, the Court found that the opposition to defendants' motion created a material question of fact, "however weak," on the claims that plaintiff's work environment was permeated by racial hostility and disparate treatment based on employees' race.

For example, plaintiff submitted the affidavit of Patricia Randisi who affirms in vague and conclusory fashion that there had been a "number of issues brought to the attention of the Gossett administration concerning racial slurs towards or in reference to the black staff and residents." However, Ms. Randisi also averred that the word "Canadian" was a "code word" for "nigger" at

4

the Gossett facility and that a white employee had on more than one occasion used the term "nigger." Thus, plaintiff's allegations concerning use of the term "Canadian" as a covert racial slur is not "wholly conclusory" as argued by defendants. Ms. Randisi's statements concerning the racially charged language used at the Gossett facility, as well as the comments of Consuelo Bernard (discussed below) are based on personal knowledge. Thus, the Court must reject defendants' peculiar contention that "claims by others [like Ms. Randisi and Ms. Consuelo] that [racial] slurs were used are hearsay statements not admissible on summary judgment." In support of this inaccurate restatement of the law, defendants cite *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) which involved use of a prior inconsistent statement as evidence in chief in the context of summary judgment. The case does not stand for the proposition that a party cannot submit affidavits from persons with personal knowledge of the facts involved in a lawsuit in opposition to a motion for summary judgment and is thus inapposite to the case at bar.

In another affidavit submitted by plaintiff, Consuelo Bernard makes several seemingly incongruous statements about "student complaints" of racial slurs used in "the facility" but there are no facts detailing the students or facility to which she refers. Ms. Bernard not does even aver that she works or has worked at the Gossett residential center. However, the Court can infer that she is an employee with knowledge of the racial environment at Gossett based on the attachment to her affidavit which is a racial incident report she prepared and signed in January 2002 as a "staff" member at the Gossett facility. Moreover, she attests in one paragraph of her affidavit that she has overheard employees refer to staff members "in unacceptable derogatory racial terms such as 'lazy niggers'" and "idot spik," although she does not provide names, dates or other details concerning the alleged use of racial slurs. Crediting Ms. Consuelo as a purported

5

employee of the Gossett center with knowledge of the racial environment as well her comments concerning racial slurs used by unidentified employees on unspecified occasions is exactly the type of inference drawing required on behalf of the non-moving party as directed by decisions such as *Richardson, supra.*[2]

Finally, the undisputed evidence demonstrates that a racially offensive joke was circulated at the Gossett Facility. Oddly enough, the "Farmer's Dayvorce" joke was also one of the racial incidents involved in *Richardson*. In *Richardson,* the employees responsible for distributing the joke were terminated although they were later reinstated. In the present case, defendants point out that the culpable employee was counseled, thus demonstrating that Gossett facility administrators responded appropriately to the seriousness of the conduct. However, the Second Circuit noted in *Richardson* that "there were other incidents in response to which DOCS took no action, and harassment continued after [plaintiff] made her complaints. We thus believe that reasonable jurors could disagree about whether DOCS's responses were so effectively remedial and prompt as to shield DOCS from liability as a matter of law." *Richardson*, 180 F.3d at 442.

The same "reasonable juror" standard compelled the Court to deny defendants' summary judgment motion in this case. Counsel for the Gossett facility and each individually named defendant has presented evidence and argued vehemently that plaintiff's allegations concerning

---

[2]

On the other hand, there are no facts or attachments included with the affidavit submitted by Khabir Abdullah which suggest that he has personal knowledge of the occurrences to which he attests or that the various incidents detailed in his affidavit even occurred at Gossett. Moreover, most of the disconnected, partial sentences in Abdullah's affidavit do not even suggest racial hostility nor do they appear to be in any way relevant to plaintiff's claims. To wit, Abdullah's reference to two instances of unspecified "racial material" being found "under the desk blotter of a [sic] ex-secretary" and in a staff lounge are meaningless and his recollection that a white female staff member stated she was a "black woman trapped in a white women's [sic] body" is utterly devoid of racial animus.

6

the racial environment at Gossett and the alleged refusal by management to address those concerns are false. Plaintiff, in turn, failed to oppose properly defendants' motion for summary judgment, but has nevertheless managed by the slimmest of margins to present triable questions of fact concerning the racial environment in his workplace and the actions or inactions of the individually named defendants which either contributed to the racial hostility or failed to remedy it. It is most decidely not the province of the Court, but rather, a properly assembled jury, to resolve credibility and evidentiary issues, however thin, presented by a motion for summary judgment.

**2.     Disparate Treatment**

**a.     Failure to Exhaust Administrative Remedies**

Insofar as plaintiff's claims concerning disparate treatment, the Court found previously that these allegations survived summary judgment by a similarly thin margin. Defendants argue that the Court did not address their argument that all but one of plaintiff's claims are subject to dismissal based on his failure to exhaust them administratively prior to commencing the instant litigation. Surely defendants are familiar with the Second Circuit's "loose pleading" standard in employment discrimination litigation. To wit, there are at least three instances in which a plaintiff may assert a claim in litigation that was "reasonably related," but not specifically pled in her administrative complaint: (1) claims within the scope of the EEOC investigation likely to grow out of the charge; (2) claims of retaliation for filing the EEOC charge; and (3) further incidents of the type alleged in the EEOC charge that occur after the filing of the charge. *See Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993). The first type of "reasonably related" claim recognized in *Butts* "is essentially an allowance of loose pleading." *Id.* This allowance recognizes that "EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert

7

the EEOC to the discrimination that a plaintiff claims she is suffering." *Id.* Thus claims not raised in the EEOC complaint are still allowed to be brought "where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (citing *Smith v. American President Lines, Ltd.*, 5721 F.2d 102, 107 n.10 (2d Cir. 1978)). The Second Circuit has also recognized two other types of claims that are reasonably related to the claims asserted in an EEOC complaint: (1) a claim "alleging retaliation by an employer against an employee for filing an EEOC charge," and (2) a claim where the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402-03.

Second Circuit precedent clearly suggests, if not commands, that when faced with discrimination allegations not brought before the EEOC or state human rights agency, a court should apply the broad and inclusive mechanism of the *Butts* pleading exceptions. *See Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 163 (2d Cir. 2001) (EEOC's investigation following complaint of alleged age and sex-based discrimination on the part of supervisor could reasonably be expected to inquire into other instances of alleged discrimination by the same actor); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Reading [plaintiff's] complaint with the **required liberality** . . . we conclude that the complaint sufficiently alleges that the negative job reports, below-average salary increases, reprimands, and ultimate termination were retaliation against Legnani for the discrimination charge filed with the EEOC in July 1993 and are therefore reasonably related to that charge) (emphasis added); *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003) (where line between various discrimination claims is hard to trace, attempts to make demarcation before both parties have had opportunity to offer evidence at trial is inappropriate).

In this case, plaintiff alleged in his EEOC complaint that he was treated differently than a

8

white employee in the context of a disciplinary matter. It may reasonably be assumed at this stage of the proceedings that additional instances of disparate treatment and/or retaliation would also have been investigated by the EEOC in the scope of its investigation of plaintiff's initial complaint.

**b.     Merits of Disparate Treatment Claims**

Defendants argue that given the now undisputed facts set forth in the Statement of Material Facts in support of their summary judgment motion, which plaintiff failed properly to oppose, there is no evidence to support his allegations of disparate treatment. That plaintiff may have undisputably violated departmental policies and procedures in his restraint of resident "Craig M." during a fight with another resident is not dispositive of plaintiff's allegations that he was nevertheless treated differently than a white co-worker involved in a more serious incident in which a resident was left permanently disabled. This is particularly true when defendants have not and, for that matter, could not, refute the allegations set forth in the affidavit of Kenneth Brown concerning the facility's handling of the "Craig M." incident. Mr. Brown states that when white staff members are involved in resident discipline incidents, the word of the staff member is credited by administrators over the word of the resident. In the case of non-white staff members, however, the word of the resident is commonly accepted over the word of the staff member. As examples of this discriminatory policy, Brown states that immediately following the "Craig M." incident he was present at a meeting with defendants Brenda Aulbach and Ernest Germano wherein administrators were "finger point[ing]" at one another concerning who would take responsibility for the incident. Ultimately, Brown avers that Aulbach ordered him to prepare an incident report charging plaintiff with lack of supervision even though there were no non-resident witnesses to the restraint. In contrast to this instance, Brown attests that the word of three white employees was taken over the word of 45 residents concerning how the restraint of resident Lee

9

Jackson resulted in Jackson's paralyzation, blindness and permanent brain damage. In a further incident, a white resident supervisor was not charged with lack of supervision when it was discovered that two residents in his unit had been engaging in oral sex for a period of three weeks before being caught by staff members.

Brown also states that when he began working at the Gossett facility, defendants Aulbach and Germano had a "target list of staff members to keep an eye on" which included plaintiff and four other staff members, all of whom were black. According to Brown, one supervisor "made a specific point of showing [him] that she was systematically targeting [plaintiff.]" Brown avers that the administration at Gossett "monitor[ed]" plaintiff when he went to the bathroom and noted how long his bathroom breaks were which was never done to white staff members. Finally, Brown stated that it took much longer for sufficiently qualified minority staff members to be promoted as compared to their white counterparts.

Plaintiff averred during his deposition and in his affidavit filed in opposition to defendants' summary judgment motion that he was disciplined more harshly than white staff member for less egregious conduct, particularly in connection with the "Craig M." incident. Plaintiff asserted that he received more severe punishment than white employees in matters of alleged tardiness and failing to secure his facility keys. That some or most of the white employees identified by plaintiff were also disciplined by Gossett for tardiness and security breaches is not dispositive of plaintiff's claims that he was treated more severely. Nor do these undisputed facts dispose of plaintiff's unsupported, but nevertheless specific factual claim that his time cards were altered or tampered with.

Plaintiff further charged that he received disparate treatment in connection with requests for personal leave, requests for more desirable shifts, and opportunities for career advancement. Specifically, plaintiff testified in his deposition that he was denied paternity leave upon the birth

10

of his son for failure to fill out paperwork or give notice of his need for leave while white staff members received paternity leave with no such restrictions or requirements. Plaintiff also averred that on July 28, 1997, he was denied the use of personal leave to cover a day off for "stress," while several white employees were allowed to take personal leave without providing a reason. That it is now undisputed that plaintiff was "regularly permitted" to take annual, personal and sick leave is not dispositive of whether he was treated differently than white employees in the specific instance he refers to. And while is it undisputed that the promotion plaintiff claims he was unlawfully denied required him to have a bachelor's degree, plaintiff asserts that a white employee named Wright was hired into the same position having only a high school diploma. Moreover, plaintiff avers that the Gossett facility offered an "Apprenticeship Program" which would have allowed him to obtain the promotion while getting necessary training "on the job." Neither of these allegations was specifically addressed or refuted by defendants. Based upon the foregoing, it was clearly appropriate for the Court to deny summary judgment and leave the factual questions concerning plaintiff's alleged disparate treatment claims to a jury.

**3.    Retaliation**

The Court's previous determination not to dismiss plaintiff's retaliation claim for failure to exhaust administrative remedies was appropriate for the reasons outlined in Section II(A)(2)(a) above.

**4.    Qualified Immunity**

The Court is well cognizant of the right of individual defendants to escape liability or even prosecution for alleged civil rights violations on the basis of qualified immunity. Defense counsel is surely equally cognizant that the same disputed factual issues which prevented the Court from granting defendants' motion for summary judgment on the claims of hostile work environment, disparate treatment and retaliation preclude the Court from considering presently the individually

11

named defendants' asserted defenses of qualified immunity.

In addition to the specific allegations against defendants Aulbach and Germano referenced above, plaintiff also asserts that these defendants were fully aware of, complicit in and/or did little or nothing to address the racially hostile work environment which included common use of racial slurs and disparate treatment of minority employees. Plaintiff's claims against defendants Farkas, Ward-Harper and Impicciatore are principally that they failed adequately to address or remediate his complaints of racial discrimination. Defendants correctly point out that they have provided evidence that they did investigate and address complaints of discrimination but these undisputed facts are not dispositive of whether their response was sufficient and effective. *See Richardson*, 180 F.3d at 443. Given the highly inflammatory nature of the allegations made by plaintiff which the Court must credit concerning the racial language or "code" used to refer to minority employees and the allegations of blatant disparate treatment of minority staff in matters of discipline and promotion, the Court could not find as a matter of law that defendants Aulbach and Germano are entitled to qualified immunity. By no stretch could the Court determine, assuming the truth of plaintiff's factual assertions, that defendants Aulbach and Germano "[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Lane*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Moreover, indifference or inadequate response to the racial discrimination as well as failure to effectively eliminate it on the part of defendants Farkas, Ward-Harper and Impicciatore as alleged by plaintiff is a factual question upon which reasonable jurors could surely disagree. Based thereupon, an award of summary judgment based on qualified immunity is inappropriate.

**5.    Statute of Limitations**

Defendants contend that the Court erred in refusing to grant summary judgment to

defendant Farkas based on their argument that all claims against him are barred by the applicable three year statute of limitations. To wit, defendants contend that though plaintiff filed his complaint in November 2000, Farkas retired in December 1997. Thus, defendants contend that only those incidents which occurred between November 1997 and December 1997 are actionable as against Farkas. Defendants argue that since plaintiff does not allege any discriminatory conduct on the part of Farkas during November 1997 or after, his claims against Farkas are time-barred. The Court disagrees. As referenced above, plaintiff's claims against Farkas and other administrators at the Gossett facility are that they knew the workplace was charged with racial animus and discriminatory conduct and they did little or nothing to eliminate it. It is undisputed that plaintiff met with Farkas and other administrators, including defendant Germano, in October 1997, a date which precedes the applicable statute of limitations. Plaintiff claims that Germano "stormed out" of the meeting after he asked what steps were being taken to alleviate the racial hostility at Gossett, a claim vehemently denied by Germano. Plaintiff also asserts that defendant Farkas told him he would soon be leaving the facility, but that plaintiff better "watch [his] back" because he "cause[d] a lot of trouble." Given plaintiff's allegation that defendant Farkas was aware of both the unlawfully hostile work environment at Gossett and defendants' efforts to target plaintiff, the claim that Farkas continued to fail to remedy the situation between the date of the meeting and the date of his retirement is both actionable and timely. Thus, contrary to defendants' arguments, the "continuing violation" theory is very much applicable to plaintiff's claims against all defendants, including Farkas.

**B.     Cross-Motion for Extension of Time to Respond to Summary Judgment**

The Court disagrees with plaintiff concerning his contention that the failure of his former counsel to file an appropriate response to defendants' Statement of Material Facts represents good cause and/or excusable neglect sufficient to extend his time for filing a responsive statement in

13

accordance with Local Rule 7.1.  Mr. Weinshenker avers that at an unspecified date and time he spoke to an unidentified male clerk of the Court and was told that it would be acceptable to forego filing a separate response to defendants' 7.1 Statement since his motion response refuted each Statement of Material Fact asserted by defendants.  Even if this vague excuse rang true, it is not sufficient to discharge a party's obligation to follow the rules of the Court.  The Second Circuit has held that "[w]ith regard to the oral communication with the clerk's office, such statements by a member of the clerk's office staff are ***not official judicial assurances that qualify as unique circumstances***.  'Judicial officer,' means a judge or a member of a judge's staff empowered to speak in the judge's behalf." *Rezzonico v. H& R Block, Inc*., 182 F.3d 144, 152 (2d Cir. 1999) (emphasis added).  In *Rezzonico*, the court held that a deputy clerk's assurance to an attorney that the trial court deemed the motion at issue timely, when in fact it had not, led her to believe that the time for filing an appeal had been restarted, did not qualify as "unique circumstances" because the deputy clerk was not a "judicial officer." *Id*.

As a further matter, plaintiff's cross-motion does not address the prejudice which would inure to defendants should the Court grant plaintiff's request to extend the time to respond to a motion which has already been reviewed and decided by the Court.  The time to respond to a summary judgment motion is while the motion is pending, not in preparation for trial.  Of course, as referenced previously, plaintiff cannot be deemed to have admitted the ultimate factual or legal conclusions in this case concerning the validity of his racial discrimination claims.  The Court is also mindful that plaintiff has not admitted those Material Facts cited by defendants which were specifically refuted in his opposition papers with appropriate citations to the record.  However, the Court's prior determination that plaintiff is deemed to have admitted defendants' 7.1 Statement concerning specific factual issues such as plaintiff's actions or inactions at particular dates and times, the circumstances of particular disciplinary proceedings against plaintiff and

14

other employees, and the Gossett facility's hiring policies and history of employment will stand.

## IV.   CONCLUSION

Based on the foregoing, defendants' motion for reconsideration is DENIED and plaintiff's cross-motion for an extension of time within which to file a responsive 7.1 Statement of Material Facts is likewise DENIED.

IT IS SO ORDERED.

Dated: August 17, 2006
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge